ROGER A. CARNAGEY (SBN 79005)
Attorney at Law
One Kaiser Plaza, Suite 601
Oakland, CA 94612
(510) 452-5005
(510) 451-2944 fax

Attorney for Plaintiff
EDWARD LEVINE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD LEVINE,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF ALAMEDA, a California Charter City, and JAMES M. FLINT, both individually and as City Manager for the City of Alameda,<br><br>        Defendants.<br>_____/ | Case No. C04-01780 CRB<br><br>**PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: September 2, 2005<br>Time: 8:30 a.m.<br>Place: Courtroom No. 8, 19th Floor<br>       Hon. Charles R. Breyer |

Plaintiff Edward Levine hereby submits this separate statement of undisputed material facts in support of his motion for summary adjudication/summary judgment in compliance with the Federal Rules of Civil Procedure, Rule 54 and the Local Rules of Court.

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 1. Plaintiff Edward Levine was employed by defendant City of Alameda from Fall 1999 to 2004 in competitive positions. | Decl. of R. Carnagey, ¶2, Exh. 1, 62:17-66:11; ¶8, Exh. 7, ¶3:26-28, ¶5. |
| 2. During his employment with defendant City of Alameda, Levine was a classified civil service employee. | Id. |
| 3. Prior to Fall 1999, Levine was employed by the Alameda Reuse and Redevelopment Agency as a non-civil service employee. | Decl. of R. Carnagey, ¶8, Exh. 7, ¶3:26-28. |
| 4. Levine's job performance was satisfactory during the period of his employment with defendant City of Alameda. | Decl. of R. Carnagey, ¶2, Exh. 1, 7:19-9:2; ¶8, Exh. 7, ¶7; ¶10, Exh. 9 ; Answers to Req. for Admission No. 2. |

| # | Fact | Citation |
|---|---|---|
| 5. | In October 2003, defendant James Flint, the City Manager for the City of Alameda, directed that Levine be subjected to a performance improvement plan based upon his perception of Levine's "communication" problems. | Decl. of R. Carnagey, ¶2, Exh. 1, 83:4-84:7, 99:24-104:6. |
| 6. | The City Manager is the ultimate decisionmaker regarding discipline and termination of City of Alameda employees. | Decl of R. Carnagey, ¶7, Exh. 6, 10:13-11:15. |
| 7. | Levine's immediate supervisor, Deborah Potter, did not agree with Flint's imposition of the performance improvement plan upon Levine. | Decl. of R. Carnagey, ¶2, Exh. 1, 83:4-84:7, 111:19-113:25. |
| 8. | Between October 2003 and January 2004, Potter was developing a performance improvement plan for Levine. | Decl. of R. Carnagey, ¶2, Exh. 1, 83:4-84:7; 102:19-103:10. |
| 9. | In late January 2004, Potter submitted a draft performance improvement plan to the City Manager's office for approval. | Decl. of R. Carnagey, ¶2, Exh. 1, 102:19-103:10. |
| 10. | On or about February 17, 2004, Levine was given a written notice of the elimination of his position with the City of Alameda due to "withdrawal of funding." | Decl. of R. Carnagey, ¶4, Exh. 3, 41:21-43:15. |
| 11. | Levine was the only City of Alameda employee whose position was eliminated in February 2004. | Decl. of R. Carnagey, ¶10, Exh. 9; Answer to Req. for Admission No. 15. |
| 12. | On February 25, 2004, Levine submitted a written request for a pre-termination hearing to the City Manager. | Decl. of R. Carnagey, ¶3, Exh. 2, 177:16-178:21. |
| 13. | On February 26, 2004, the City of Alameda's Human Resources Director, Karen Willis, gave Levine a written response to his February 25, 2004 request which declined to grant him a hearing and advised Levine that there were no appeal rights for his termination. | Decl. of R. Carnagey, ¶3, Exh. 2, 182:17-183:7. |
| 14. | Karen Willis intended her written notice to advise Levine that there were no appeal or hearing rights available under the applicable Memorandum of Understanding between the City and Levine's employee organization. | Decl. of R. Carnagey, ¶4, Exh. 3, 49:3-50:8. |
| 15. | On February 27, 2004, Levine's termination of employment became effective. | Decl. of R. Carnagey, ¶8, Exh. 7, ¶8. |
| 16. | Levine has never received any pre-termination or post-termination hearing of any kind. | Decl. of R. Carnagey, ¶8, Exh. 7, ¶9. |

PLAINTIFF'S SEPARATE STATEMENT
OF UNDISPUTED MATERIAL FACTS         2

| | |
|---|---|
| 17. Levine alleges that his layoff based upon lack of funding and elimination of his classified civil services position was a sham and pretext. | Complaint, ¶9, 13. |
| 18. Levine's failure to satisfactorily complete the performance improvement plan could be cause for discipline action including termination of his employment. | Decl. of R. Carnagey, ¶4, Exh. 3, 35:2-36:17. |
| 19. Levine's job duties as Property Development Manager did not limit him to performance of work only on the golf course/hotel resort project. | Decl. of R. Carnagey, ¶2, Exh. 1, 66:12-67:1; ¶4, Exh. 3, 53:21-56:2. |
| 20. Between November 2003 and his layoff on February 27, 2004, Levine was assigned to perform work on projects other than the golf course/hotel resort project, specifically the Advancing California's Emerging Technologies ("ACET") Project. | Dec. of R. Carnagey, ¶2, Exh. 1, 20:25-21:13; ¶8, Exh. 7, ¶6. |
| 21. Subsequent to February 27, 2004, the ACET project duties were reassigned to Deborah Potter. | Decl. of R. Carnagey, ¶2, Exh. 1, 23:13-25:3. |
| 22. In March 2004, Development Services Director Paul Benoit demanded that Elizabeth Johnson, a Base Reuse Planner (Planner II), return to work on a full-time basis. | Decl. of R. Carnagey, ¶5, Exh. 4, 7:1-9:15. |
| 23. In September 2004, Elizabeth Johnson returned to work full-time and performed work duties from part-time status (commenced in September 1999) and performed work duties previously done by Levine, particularly as to the Environmental Impact Report for the golf course/hotel resort project. | Decl. of R. Carnagey, ¶5, Exh. 4, 26:14-47:5; ¶8, Exh. 7, ¶5. |
| 24. At the end of March 2004, defendants City of Alameda and James Flint hired Stephen Proud as Alameda Point Project Manager. Mr. Proud was assigned some of the work duties previously performed by Deborah Potter. | Decl. of R. Carnagey, ¶2, Exh. 1, 10:14-16. |
| 25. Levine's position as Property Development Manager was funded by both Alameda Point bond funds and other sources. | Decl. of R. Carnagey, ¶2, Exh. 1, 18:19-19:1, 19:25-20:24. |
| 26. Jim Flint approved the assignment of ACET project manager duties to Levine. | Decl. of R. Carnagey, ¶2, Exh. 1, 30:8-30:13. |

PLAINTIFF'S SEPARATE STATEMENT
OF UNDISPUTED MATERIAL FACTS          3

| | |
|---|---|
| 27. From mid-2002 to late 2003, Grace Sagun Harley, a Management Analyst in the City of Alameda Finance and Administration Department, was told that Jim Flint "has it in for Ed" and wanted to "get rid of" him by her supervisor, Nanette Banks. These statements occurred immediately after meetings between Banks and Flint. | Decl. of R. Carnagey, ¶6, Exh. 5, 95:4-97:4. |
| 28. Prior to mid-January 2004, Grace Sagun Harley was directed to monitor Levine's work assignments to limit his work to the golf course project and AP Bond funded projects. | Decl. of R. Carnagey, ¶6, Exh. 5, 29:18-33:25. |
| 29. Between February 27, 2004 and September 24, 2004, Alameda Point Bond funds and ARRA funds were continuously used for predevelopment activities on the golf course project. | Decl. of R. Carnagey, ¶2, Exh. 1, 123:6-126:3; ¶6, Exh. 5, 97:5-98:21. |
| 30. Alameda Point Bond funds are equivalent to what is referred to as "ARRA" (Alameda Reuse and Redevelopment Agency) funding. They are funds used for predevelopment activities. | Decl. of R. Carnagey, ¶2, Exh. 1, 17:23-20:24; ¶7, Exh. 6, 67:19-68:5. |
| 31. Lucretia Akil was promoted to the position of Management Analyst in April 2004. Ms. Akil performed overnight work on the LAMBRA activities at Alameda Point, a function previously performed by Mr. Levine's group. | Decl. of R. Carnagey, ¶2, Exh. 1, 34:6-34:14; 55:22-58:13; ¶8, Exh. 7, ¶4:17-27 |
| 32. Nanette Banks was assigned to negotiate a new lease with the Maritime Administration ("MARAD") late 2003. This work continued after Levine's termination. Levine had negotiated this lease in 1997 and had extensive lease negotiation experience. Ms. Banks has no such lease negotiation experience. | Decl. of R. Carnagey, ¶5, Exh. 4, 51:19-56:6; ¶8, Exh. 7, 4:20-26; ¶9, Exh. 8, 15:17-16:3; 40:11-41:2. |
| 33. In January 2004, the ARRA directed that the developer selection process on the golf course/hotel resort project be suspended but that all predevelopment activities should continue in anticipation of future completion of the project. | Decl. of R. Carnagey, ¶7, Exh. 6, 64:12-67:18. |
| 34. Between November 2003 and his termination date, Levine spent at least 50% of his work time on the ACET project, which is not funded by ARRA funds. This ACET work was expected to increasingly consume the bulk of Levine's work time in 2004. | Decl. of R. Carnagey, ¶2, Exh. 1, 28:7-25; Exh. 7, ¶6. |

PLAINTIFF'S SEPARATE STATEMENT
OF UNDISPUTED MATERIAL FACTS              4

| | |
|---|---|
| 35. On numerous occasions since mid-2002, Jim Flint has complained about "problems" with Levine's work performance (relating back to 1999) to various subordinates. Many of these complaints were generalized in nature. None of these complaints were ever documented or discussed with Levine | Decl. of R. Carnagey, ¶2, Exh. 1, 86:21-91:4; ¶7, Exh. 6, 17:7-21-5; 26:0-28:17; 214:16-220:7. |
| 36. Jim Flint decided to lay off Levine shortly after the ARRA closed session in October 2003. | Decl. of R. Carnagey, ¶7, Exh. 6, 105:10-21. |
| 37. The process of obtaining the entitlements and permits preliminary to actual construction of the golf course site is several years worth of work. | Decl. of R. Carnagey, ¶2, Exh. 1, 123:6-19 (Depo. Exh. 15) p. 5.. |
| 38. Levine possessed extensive experience in leasing and property management when he was first employed by the ARRA in 1995. | Decl. of R. Carnagey, ¶8, Exh. 7, ¶4. |

Dated: July 15, 2005

_____
ROGER A. CARNAGEY
Attorney for Plaintiff
EDWARD LEVINE

PLAINTIFF'S SEPARATE STATEMENT
OF UNDISPUTED MATERIAL FACTS               5