1  ROGER A. CARNAGEY (SBN 79005)
   Attorney at Law
2  One Kaiser Plaza, Suite 601
   Oakland, CA 94612
3  (510) 452-5005
   (510) 451-2944 fax
4
   Attorney for Plaintiff
5  EDWARD LEVINE

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10 | EDWARD LEVINE,                          | Case No. C04-01780 CRB
11 |         Plaintiff,                      | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
12 |    vs.                                  |
13 | CITY OF ALAMEDA, a California Charter   |
   | City, and JAMES M. FLINT, both individually | Hearing Date: September 9, 2005
14 | and as City Manager for the City of Alameda, | Time: 10:00 a.m.
   |                                         | Place: Courtroom No. 8, 19th Floor
15 |         Defendants.                     |        Hon. Charles R. Breyer
   | _____/|

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUMMARY OF ARGUMENT**

1. Plaintiff Possessed the Right to a Pretermination Hearing

    *Cleveland Bd. of Education v. Loudermill* (1985) 470 U.S. 532

    *Mendoza v. Regents of University of California* (1978) 78 C.A.3d 168

    *Williams v. County of Los Angeles* (1978) 22 C.3d 731, 736

    *Townsel v. San Diego Metropolitan Transit District* (1998) 65 C.A.4th 940

    *Arnett v. Kennedy* (1974) 416 U.S. 134

    *Duncan v. Department of Personnel Administration* (2000) 77 C.A.4th 1166

    *Franks v. Magnolia Hospital* ( N.D. Miss. 1995 ) 888 F.Supp. 1310, 1315-1316

    *Dwyer v. Regan* (2nd Cir. 1985) 777 F.2d 825, 833

    *Clements v. Airport Authority of Washoe Co.* (9th Cir. 1995) 69 F.3d 321

2. Plaintiff Was Deprived of His Right to a Post-Termination Hearing

    *Dwyer v. Regan* (2nd Cir. 1985) 777 F.2d 834

    *Vaca v. Sipes* (1967) 306 U.S. 171

    *Sidhu v. Flecto Co, Inc.* (9th Cir. 2002) 279 F.3d 896

3. Defendants Enjoy No Qualified Immunity

    *Scheur v. Rhoades* (1974) 416 U.S. 232, 237

    *Hafer v. Melo* (1991) 502 U.S. 21

    *Bair v. Krug* (9th Cir. 1998) 853 F.2d 672

    *Lake County Estates, Inc. v. Lake Tahoe Reg. Plan Agency* (1979) 440 U.S. 391, 401

    *Duncan v. Department of Personnel Administration* (2000) 77 C.A.4th 1166, 1182-1183

    *Dwyer v. Regan* (2nd Cir. 1985) 777 F.2d 825, 836-837

4. Plaintiff is not required to Demonstrate a Custom or Policy of Denying Due Process to Laid-Off Employees

    *Cleveland Bd. of Education v. Loudermill* (1985) 470 U.S. 532

    *Clements v. Airport Authority of Washoe Co.* (9th Cir. 1995) 69 F.3d 321

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        1. Employment History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            a. Prior to Working for City of Alameda . . . . . . . . . . . . . . . . . . . . . . . . 1

            b. Employment with the City of Alameda . . . . . . . . . . . . . . . . . . . . . . . 2

    B. THE PERFORMANCE IMPROVEMENT PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C. THE PURPORTED LAYOFF OF LEVINE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    1. Plaintiff Possessed a Right to a Pretermination Hearing . . . . . . . . . . . . . . . . . . . . 9

    2. Plaintiff Was Deprived of His Right to a Post-Termination Hearing . . . . . . . . . 13

    3. Defendants Enjoy No Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    4. Plaintiff is not Required to Demonstrate a Custom
       or Policy of Denying Due Process to Laid-Off Employees . . . . . . . . . . . . . . . . 14

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

Arnett v. Kennedy (1974)
    416 U.S. 134 .................................................. 9

Bair v. Krug (9th Cir. 1998)
    853 F.2d 672 .................................................. 13

Clements v. Airport Authority of Washoe Co. (9th Cir. 1995)
    69 F.3d 321 ................................................... 12

Cleveland Bd. of Education v. Loudermill (1985)
    470 U.S. 532 ................................................ 9,14

Duncan v. Department of Personnel Administration (2000)
    77 C.A.4th 1166 ........................................... 10,13

Dwyer v. Regan (2nd Cir. 1985)
    777 F.2d 825 ......................................... 11,12,13,14

Franks v. Magnolia Hospital ( N.D. Miss. 1995 )
    888 F.Supp. 1310 ............................................. 11

Hafer v. Melo (1991)
    502 U.S. 21 .................................................. 13

Lake County Estates, Inc. v. Lake Tahoe Reg. Plan Agency (1979)
    440 U.S. 391 ................................................. 13

Mendoza v. Regents of University of California (1978)
    78 C.A.3d 168 ................................................. 9

Scheur v. Rhoades (1974)
    416 U.S. 232 ................................................. 13

Sidhu v. Flecto Co., Inc. (9thCir. 2002)
    279 F.3d 896 ................................................. 13

Townsel v. San Diego Metropolitan Transit District (1998)
    65 C.A.4th 940 ................................................ 9

Vaca v. Sipes (1967)
    306 U.S. 171 ................................................. 13

Williams v. County of Los Angeles (1978)
    22 C.3d 731 ................................................... 9

## I. PRELIMINARY STATEMENT

Defendants City of Alameda and James Flint seek summary judgment on plaintiff's claims of age discrimination and violation of his due process right to an evidentiary hearing regarding Flint's decision to lay Levine off in February 2004. Although plaintiff CONCEDES that summary judgment should be granted with respect to the age discrimination claim ONLY, Levine submits that there are disputed issues of material fact relating to the due process claim which require that summary judgment be denied.

## II. STATEMENT OF CASE

### A. STATEMENT OF FACTS

#### 1. Employment History

##### a. Prior to Working for City of Alameda

Prior to joining the City of Alameda in July 1995, Mr. Levine was employed for over 20 years managing large public and private sector real estate redevelopment projects. Work included project planning, feasibility analysis, managing building design and public approvals, negotiating development agreements, overseeing bidding and construction and leasing. From 1989 to 1995, as Director of Facilities Planning and Management for the University of California's Hastings College of Law, he was in charge of redevelopment of the College's surplus properties and leasing and management of its office/commercial and residential properties. Between 1980 and 1989, as Project Manager for Santa Fe Pacific Realty (the real estate subsidiary of the Southern Pacific and Santa Fe Railroads), he managed the development of a number of large industrial park projects, office buildings and hotels. From 1975 to 1980, as a licensed Civil Engineer, he designed and oversaw construction of a number of office and residential buildings. Mr. Levine holds a bachelors degree in Civil Engineering from the City University of New York and masters degrees in civil engineering and architecture from the University of Minnesota and University of California, Berkeley, respectively. (Decl. of R. Carnagey, ¶8, Exh. 7, ¶3:26-28)[1]

---

[1] All citations to the evidentiary record refer to the Declaration of Roger A. Carnagey in Support of Plaintiff's Motion for Summary Judgment, filed on July 15, 2005, excepting those citations to the Supplemental Declaration of Roger A. Carnagey in Opposition to Defendants' Motion for Summary Judgment, filed herewith.

MEMO OF P&A IN OPPOSITION TO
DEFENDANTS' MO FOR SUMMARY JUDGMENT      1

### b. Employment with the City of Alameda

Mr. Levine was hired as Facilities Manager by the Alameda Reuse and Redevelopment Authority (ARRA) in July 1995. The ARRA was the Joint Powers Authority (JPA) created by the State pursuant to Federal legislation to serve as the Local Reuse Authority (LRA) to oversee redevelopment of the former Alameda Naval Air Station. The ARRA was originally governed by a Board of Directors which included the five City Councilmembers from Alameda and four other members representing the cities of Oakland and San Leandro, Alameda County and the local Congressional office. Although the ARRA was technically separate and independent of the City of Alameda, its Executive Director and employees reported to the Alameda City Manager and all of its administrative functions (payroll human resources, office and technical support, etc.) were provided by the City. In 1999, the ARRA Board was reconstituted to include only the five members of the Alameda City Council. It was subsequently decided that the ARRA should be absorbed into the City and that ARRA employees should become City employees covered under civil service. (Decl. of R. Carnagey, ¶8, Exh. 7, ¶3:26-28) Also in 1999, the City of Alameda and ARRA issued bonds which were solely dedicated to the funding of the ARRA's redevelopment/reuse of the former naval air station property, and federal funding of those activities had essentially ceased. (Supp. Decl. of R. Carnagey, ¶2, Exh A, ¶2)

As Facilities Manager, Mr. Levine's primary responsibility was for leasing, property management and overseeing building upgrades for the over 200 buildings (constituting approximately 3.5 million square feet of leasable space) at the form Naval Air Station (renamed Alameda Point) and the nearby Fleet Industrial Supply Center (FISC property) which was acquired by the City from the Navy in a separate conveyance. Although his job focused on leasing and property management, Mr. Levine was involved in a variety of other projects and duties relating to the redevelopment process. These included negotiations with the Navy regarding a Master Lease for the entire base, working with the State to include the base within an enterprise zone, coordinating with the City Planning Department to obtain use permits for all proposed leases, managing major studies of base infrastructure and building upgrade requirements, negotiating a port services agreement with the Maritime Administration, and ongoing coordination with citizen advisory groups. In December 1999

Mr. Levine was made a full-time civil service employee of the City and his job classification was changed to Economic Development Manager. (This was an existing civil service job classification with Code No. 1711). In October 2000, the Economic Development Manager classification was revised to become Leasing and Property Manager. (Decl. of R. Carnagey, ¶8, Exh. 7, ¶4)

In about December 2001, leasing and property management responsibility was transferred to a consortium of private sector developers -- Alameda Point Community Partners (APCP) – which was selected as the master developer for the base. At this time Mr. Levine was assigned project management responsibilities for interim use and development of the approximately 220 acre property in the northwest corner of the base designated for development of a golf course and resort hotel. This area had been excluded from the remainder of the base which was to be managed by APCP. Mr. Levin's new job involved managing the project EIR and permitting process (permits were required from BCDC, RWQCB, Corps of Engineers), obtaining public input and concurrence regarding the plan, managing engineering design of the system needed to import approximately 1.0 million cubic yards of dredge material to construct the golf course, coordinating with the Navy regarding testing standards and protocols for dredge import and remediation of toxic materials, negotiating with potential dredge material sources, negotiating interim ground leases covering portions of the property, preparing project feasibility analyses, soliciting proposals from interested developers, management of project budget and schedule, coordination and oversight of work by consultants and the City staff, and preparation of status reports to the City Council and others as required. (Decl. of R. Carnagey, ¶2, Exh. 1, 62:17-66:11; ¶8, Exh. 7, ¶3:26-28, ¶5)

In 2002, Levine's civil service classification was changed to Property Development Manager while he was continuing to perform assigned duties on the ARRA property designated for development as a golf course/resort hotel. (Suppl. Decl. of R. Carnagey, ¶2, Exh. A, ¶¶2, 4,) The Property Development Manager's duties included a vast array of functional areas that were not exclusively associated with the golf course/resort hotel project and generally encompassed many other work areas associated with City of Alameda functions unrelated to ARRA activities, clearly a job classification that did not preclude working on projects other than the golf course/hotel development. (Id.; Decl. of R. Carnagey, ¶2, Exh. 1, 66:12-67:1; ¶4, Exh. 3, 53:21-56:2; Decl. of L. Tripoli, Part

One, Levine Depo. 208:8-16, Exh. 8) In December 2003 he was assigned project management duties for the development of a 30,000 square foot office building (including infrastructure to be provided by the City) for ACET (Advancing California's Emerging Technologies), an organization which assists high-tech start-up companies. (Dec. of R. Carnagey, ¶2, Exh. 1, 20:25-21:13; ¶8, Exh. 7, ¶6)

At the time of his termination in February 2004, the ACET project occupied at least 50% of Mr. Levine's work load. (Decl. of R. Carnagey, ¶2, Exh. 1, 28:7-25; Exh. 7, ¶6) The City Manager, Jim Flint, approved this ACET assignment to Levine. (Decl. of R. Carnagey, ¶2, Exh. 1, 30:8-30:13)

As of Mr. Levine's layoff on February 27, 2004, the ARRA had expended in excess of $800,000 of front money towards predevelopment activities on the former Alameda Naval Air Station property. (Suppl. Decl. of R. Carnagey, Exh. A, ¶8)

### B. THE PERFORMANCE IMPROVEMENT PLAN

In late October 2003, Flint ordered that Levine be put on a performance improvement plan by his supervisor, Debbie Potter. (Decl. of R. Carnagey, ¶2, Exh. 1, 83:4-84:7, 99:24-104:6) Flint had previously indicated a motivation to get rid of Levine and that he had it in for Levine (Decl. of R. Carnagey, ¶6, Exh. 5, 95:4-97:4.)

The basis for the PIP, as stated by Flint at his deposition, was "performance" problems. (Decl. of R. Carnagey, ¶2, Exh. 1, 86:21-91:4; ¶7, Exh. 6, 17:7-21:5; 26:0-28:17; 214:16-220:7) However, Mr. Flint was unable to articulate any precise performance problems with Levine except for the October 2003 "closed" session issue and an incident regarding an event, Cyberfest, that occurred in 1997. There is absolutely no documentation of any of these performance problems in the record (including defendants' document productions and Levine's personnel file). Although Flint also testified that there were other "process" problems with Levine's performance, he could not identify a single specific problem at his deposition. On the contrary, Flint merely generalized his concerns. Id.

With respect to the October 24, 2003 ARRA closed session, Levine had previously voiced his concerns about the details of the project financing to his supervisors both verbally and in writing. (Supp. Decl. of R. Carnagey, Exh. A, ¶6,7) Those written reports and memos would have regularly been sent to the office of the City Manager, Jim Flint, for his information. (Id.) Despite his expressed

concerns and request for a postponement of the October 24, 2003 ARRA closed sessions in order to develop a more comprehensive report on the financing aspects of the project, Levine's supervisor directed him to proceed with development of the staff report and omit discussion of the project financing options while denying his request for a postponement. (Supp. Decl. of R. Carnagey, ¶2, Exh. A, ¶7)

In November 2003, Levine sent a letter to his supervisors, Deborah Potter and Paul Benoit, in which he protested the imposition of the PIP on him and stated his fear tht such action was the first step towards termination of his employment by Flint. (Suppl. Decl. of R. Carnagey, ¶2, Exh. A, ¶9)

Additionally, Levine's immediate supervisor, Ms. Potter, testified in her deposition that she not only expressed disagreement and concern to Mr. Flint when he directed her to develop a PIP for Levine, but there were no other "performance" problems that she had experienced as Levine's supervisor aside from Flint's "perception." (Decl. of R. Carnagey, ¶2, Exh. 1, 7:19-9:2; ¶8, Exh. 7, ¶7; ¶10, Exh. 9 ; Answers to Req. for Admission No. 2)  The consequence of an employee's failure to satisfactorily complete the PIP is cause for discipline, including termination of employment. (Decl. of R. Carnagey, ¶4, Exh. 3, 35:2-36:17)

Over the course of his employment while defendant Flint was the City Manager, plaintiff received at least four (4) Certificates of Appreciation for his exemplary work from Flint himself. (Supp. Decl. of R. Carnagey, ¶2, Exh. A, ¶3)

### C. THE PURPORTED LAYOFF OF LEVINE

Jim Flint's decision to lay off Levine was made in or about October 2003, which was just prior to the directions given to management analyst Grace Sagun Harley that she monitor Levine's work to assure it was limited to <u>only</u> golf course and ARRA funded activities. (Decl. of R. Carnagey, ¶6, Exh. 5, 29:18-33:25; ¶7, Exh. 6, 105:10-21.)  Ms. Sagun Harley testified at her deposition that her supervisor in the Finance and Administration Department, Nanette Banks, provided her with written instructions regarding plaintiff's anticipated layoff in late 2003 or early January 2004 after Banks had met with defendant Flint. (Suppl. Decl. of  R. Carnagey, ¶3, Exh. B, 65:20-74:24, Ex. 38)  These instructions indicated that Levine was not to perform any city work outside of the golf course/resort

hotel project and that lack of funding would be the basis of his layoff, an employment decision which would foreclose Levine from receiving any otherwise requisite "meet and confer" process. Id. Levine was the only City of Alameda employee whose job was eliminated in February 2004. (Decl. of R. Carnagey, ¶10, Exh. 9; Answer to Req. for Admission No. 15) In response to his notice of layoff, Levine submitted a written request for a pretermination hearing on February 25, 2004, in which he asserted that his "layoff" was a sham and pretext because the ARRA funding had not been withdrawn for golf course related work. (Decl. of R. Carnagey, ¶3, Exh. 2, 177:16-178:21) On February 26, 2004, the City of Alameda's Human Resources Director, Karen Willis, responded in writing that Levine had no right to any appeal or hearing whatsoever. (Decl. of R. Carnagey, ¶3, Exh. 2, 182:17-183:7; ¶4, Exh. 3, 49:3-50:8) On February 27, 2004, Levine's termination became effective. (Decl. of R. Carnagey, ¶8, Exh. 7, ¶8) The City Manager, Jim Flint, was the final authority regarding Mr. Levine's layoff and request. (Decl of R. Carnagey, ¶7, Exh. 6, 10:13-11:15) Levine never received either a pretermination or post-termination hearing regarding his layoff. (Decl. of R. Carnagey, ¶8, Exh. 7, ¶9) He has alleged in this legal action that his layoff was in fact a sham and pretext for his termination from a classified position in the City of Alameda Civil Service System in order to deprive him of his due process hearing rights. (Complaint, ¶9, 13)

The interoffice memorandum dated February 17, 2004 from Jim Flint to Ed Levine regarding "Layoff" states:

> ...As a result of the ARRA's sudden recent action to indefinitely suspend development efforts on the Alameda Point Golf Course and hotel complex, the ARRA will no longer continue to fund your position. As you know, your position as Property Development Manager is completely funded by the ARRA. Because the ARRA has withdrawn funding for this project your position is being eliminated.

(Decl. of R. Carnagey, ¶4, Exh. 3, 41:21-43:15)

While Ms. Potter was drafting and developing the PIP in February 2004, defendant Flint issued this layoff notice to Levine, effective February 27, 2004. (Decl. of R. Carnagey, ¶2, Exh. 1, 83:4-84:7; 102:19-103:10) The stated basis for the layoff was the cessation of funding for Mr. Levine's classified position as Property Development Manager. Ms. Potter told Flint that the layoff notice was "inconsistent" with the pending PIP process. (Decl. of R. Carnagey, ¶2, Exh. 1, 83:4-84:7,

111:19-113:25)

The ARRA did not indefinitely suspend or cease all development efforts on the Alameda Point Golf Course and hotel complex. (Decl. of R. Carnagey, ¶2, Exh. 1, 123:6-126:3; ¶6, Exh. 5, 97:5-98:21; ¶2, Exh. 1, 17:23-20:24; ¶7, Exh. 6, 67:19-68:5.) The ARRA directed staff to suspend the developer selection process[2] but endorsed the staff recommendation that work continue relating to site remediation; completion of the EIR and permitting for import of dredge material; and negotiation of a tipping fee for receipt of dredge material in anticipation of the future development of the golf course. These activities continued following Mr. Levine's termination and constituted continuing predevelopment work on the property, as did funding for them by ARRA funds. (Decl. of R. Carnagey, ¶2, Exh. 1, 123:6-19 [Depo. Exh. 15] p. 5; Defend. Memo. of Pts. and Auth. in Supp. of Mot. for Summ. Judgmnt, 5:20-6:6)

In fact, during the entire course of his City employment, Mr. Levine performed a myriad of duties for the City. (Decl. of R. Carnagey, ¶2, Exh. 1, 62:17-66:11; ¶8, Exh. 7, ¶3:26-28, ¶5; ¶8, Exh. 7, ¶3:26-28). Although the City submits that Levine's job duties were limited to only the golf course/hotel resort project at the time of his layoff, this position is belied by the deposition testimony of Potter and Levine that plaintiff performed numerous other duties, including assignment to the ACET project in late 2003, a position not funded by ARRA funds. (Decl. of R. Carnagey, ¶2, Exh. 1, 66:12-67:1; ¶4, Exh. 3, 53:21-56:2; ¶2, Exh. 1, 20:25-21:13; ¶8, Exh. 7, ¶6; ¶2, Exh. 1, 18:19-19:1, 19:25-20:24) Additionally, pre-existing predevelopment activities on the golf course project, such as permitting, Environmental Impact Reports, dredging issues, negotiations with the U.S. Navy and others were previously coordinated by Mr. Levine in his position as Property Development Manager. There is certainly nothing in the job classification for this position regarding funding sources or restrictions. In fact, there is nothing in the job classification which limits work by the Property Development Manager to ARRA related projects. The job description is general in nature and allows work on a variety of predevelopment projects, both at Alameda Point or elsewhere in the City. Id.

---

[2] The developer selection process had been ongoing since mid-2002 and contemporaneous with all other predevelopment activities at the site such as permit application processes, site remediation and clean-up and related negotiations. (Def. MPA in Supp. of MO for Summ. Judg., 2:19-3:12)

MEMO OF P&A IN OPPOSITION TO
DEFENDANTS' MO FOR SUMMARY JUDGMENT          7

Subsequent to Levine's February 2004 layoff, these same job assignments were reassigned to Debbie Potter and Elizabeth Johnson, the latter having been directed by her supervisor, Paul Benoit, to convert her part-time position (20 hours per week) to full-time (36.5 hours per week) in early March 2004. (Decl. of R. Carnagey, ¶5, Exh. 4, 7:1-9:15; ¶5, Exh. 4, 26:14-47:5; ¶8, Exh. 7, ¶5) Ms. Johnson had been a part-time employee since 1999, when she reduced her work week in order to raise a family. Ms. Johnson testified that she assumed responsibility for the bulk of the EIR and permitting work on the golf course/hotel project which had previously been performed by Mr. Levine. Ms. Johnson further testified that prior to his termination she reported to and received direction from Mr. Levine regarding all aspects of her work on the golf course/hotel project. Ms. Potter was assigned the ACET project duties. (Decl. of R. Carnagey, ¶2, Exh. 1, 23:13-25:3)

The City also hired a new hire, Stephen Proud, and promoted an existing employee, Lucretia Akil, into positions that subsumed at least some of Mr. Levine's existing work duties as of his layoff date. (Decl. of R. Carnagey, ¶2, Exh. 1, 10:14-16; ¶2, Exh. 1, 34:6-34:14; 55:22-58:13; ¶8, Exh. 7, ¶4:17-27) Within weeks after Mr. Levine's termination the City hired a new Redevelopment Manager, Steven Proud, who was assigned to oversee negotiations with the Navy and reparation of a master redevelopment plan for Alameda Point. In order for Ms. Potter to clear time to absorb portions of Mr. Levine's workload (particularly the ACET project), she needed to share some of her existing work duties with Mr. Proud. Mr. Proud assumed responsibility for some of the work that she had previously done and their work was closely intertwined. Some or all of the work assigned to Mr. Proud could have been assigned to Mr. Levine had he not been terminate.

A junior level management analyst, Lucretia Akil, was hired to work in Ms. Potter's division very soon after Levine's termination. Ms. Potter testified that Ms. Akil had been assigned oversight responsibility for LAMBRA activities (LAMBRA is the State's designation for enterprise zones at former military bases), a function previously handled by Mr. Levine's group. Id.

During 2003, certain work which had been performed by Levine as the Leasing and Property Manager (particularly negotiation of a new agreement with the Maritime Administration "MARAD" in 1997 and review of lease renewals) was assigned to Nanette Banks in the Finance and Administration Division. Based on his experience negotiating the original MARAD agreement in

1997 and over 100 leases for building space at Alameda Point, this work should have been assigned to Levine. (Decl. of R. Carnagey, ¶5, Exh. 4, 51:19-56:6; ¶8, Exh. 7, 4:20-26; ¶9, Exh. 8, 15:17-16:3; 40:11-41:2)

Several consultant contracts for work relating to the golf course/hotel project which had previously been managed by Mr. Levine remain active up through the present. These contracts, which are currently managed by Ms. Johnson, cover a variety of engineering and planning services relating to EIR preparation and certification, permitting, engineering design for import of dredge material, site remediation, and coordination with the Navy regarding testing standards and protocols for importing dredge material. All of this work was previously managed by Mr. Levine. (Decl. of R. Carnagey, ¶5, Exh. 4, 26:14-47:5; ¶8, Exh. 7, ¶5)

The City intends to eventually complete the project based upon multi-year projections and continues to fund much of the work done by the aforementioned employees with AP Bond funds, which are the same as the "ARRA funding' referred to in defendant Flint's February 17, 2004 layoff notice to Levine. (Decl. of R. Carnagey, ¶2, Exh. 1, 123:6-126:3; ¶6, Exh. 5, 97:5-98:21; ¶2, Exh. 1, 17:23-20:24; ¶7, Exh. 6, 67:19-68:5; ¶7, Exh. 6, 64:12-67:18; ¶2, Exh. 1, 123:6-19 [Depo. Exh. 15] p. 5)

### III. LEGAL ARGUMENT

1. <u>Plaintiff Possessed a Right to a Pretermination Hearing</u>

It is well-established that a civil service employee (subject to discharge only for cause) in a competitive classification possesses a property interest in continued employment which is protected by the Due Process Clause of the Fourteenth Amendment. <u>Cleveland Bd. of Education v. Loudermill</u> (1985) 470 U.S. 532, 105 S.Ct 1487. California law parallels the federal law. <u>Mendoza v. Regents of University of California</u> (1978) 78 C.A.3d 168, 144 C.R. 117; <u>Williams v. County of Los Angeles</u> (1978) 22 C.3d 731, 736.

At a minimum, Due Process requires that a public employee be given a full evidentiary hearing at some point during the termination process when subjected to a discharge for cause. <u>Townsel v. San Diego Metropolitan Transit District</u> (1998) 65 C.A.4th 940, 946, 77 C.R. 231, 235; <u>Arnett v. Kennedy</u> (1974) 416 U.S. 134, 94 S.Ct. 1633. As part of the due process, such a public

employee is entitled to advance notice of the termination and the charges on which it is based, an opportunity to respond to those charges prior to termination, and a full evidentiary hearing after termination. Id.

Defendants argue that Levine's situation is an "ordinary" layoff based upon fiscal considerations (i.e., withdrawal of funding by the ARRA) and, thus, Levine was not entitled to either a pretermination proceeding or a post-termination hearing, but only "notice and an opportunity to be heard." Duncan v. Department of Personnel Administration (2000) 77 C.A.4th 1166; 92 C.R.2d 257. This general principle is indeed applicable to the scenario in which the public entity has engaged a deliberative process of fiscal and budget considerations whereupon a reorganization or cost-cutting decision is made to lay off a group of employees. Id. However, such is not the case with the circumstances of Levine's purported layoff.

Unlike the Duncan case and its progeny, plaintiff has alleged his layoff was a sham and pretext for his actual termination from public service (a scheme set up by defendant Jim Flint under his authority as City Manager in order to deprive Levine of his due process right to a hearing) The facts establish that Levine was a public employee and the only employee laid off by the City of Alameda in February 2004.

Plaintiff's undisputed facts also establish that defendant Flint had complained unofficially and casually about Levine's work performance for more than three years prior to his layoff, although these complaints were never documented or brought to the attention of Levine himself. Importantly, Flint made the decision to lay off Levine in October 2003 at or near the same time that Flint directed plaintiff' supervisor, Deborah Potter, to impose a performance improvement plan (which could lead to termination) on Levine, despite Potter's disagreement. During these same time frames, there were directives to steer non-ARRA funded work away from Levine (despite his extensive experience in a wide range of redevelopment and property management work) and reallocation or new assignments of ongoing golf course predevelopment duties and master development duties to other employees (Deborah Potter, Stephen Proud, Nanette Banks, Elizabeth Johnson, Lucretia Akil). These work-parceling activities for both golf course and master development duties by defendants in 2003 and 2004 are particularly dubious in view of Levine's job duties as Property Development Manager, a

broad category of duties not limited only to golf course and hotel resource activities, and the funding of such activities by both ARRA and non-ARRA funds. Flint's stated basis for Levine's layoff due to withdrawal of ARRA funds is clearly belied by these facts, especially upon consideration of the multi-year, long term nature of and continued funding of the predevelopment and other work at the former Alameda Naval Air Station.

The <u>Duncan</u> court expressly recognized that an exception to the general rule regarding public employee due process rights in a group layoff situation may exist when the layoff is alleged to be pretextual, citing <u>Franks v. Magnolia Hospital</u> (N.D. Miss. 1995) 888 F.Supp. 1310, 1315-1316. <u>Duncan, supra</u> at 1183, n.12. In <u>Dwyer v. Regan</u> (2nd Cir. 1985) 777 F.2d 825, the Court rendered a comprehensive decision as to the parameters of a pretext claim and whether a due process hearing would be required based thereon.

In <u>Dwyer</u>, the Court held that a public employee with a property interest in his continued employment who receives notice of the elimination of his position and protests that notice on grounds that it is a sham and pretext for deprivation of his due process right is entitled to a pertermination evidentiary hearing, by a third party neutral fact finder outside the agency undertaking the challenged action upon the employee's request. <u>Dwyer, supra</u> at 833. Plaintiff has clearly established that he made a written request for such a pretermination hearing on February 25, 2004, which was denied by defendants on February 26, 2004. Under these facts, plaintiff was entitled to a pretermination hearing as a matter of law. This entitlement to a pretermination hearing is especially crucial in the factual context of Levine's claim that his layoff was a sham and pretext because he has demonstrated on this motion that the pretermination and post-termination actions of defendants were in stark conflict with the stated reason for his layoff.

Defendants argue that Levine received his due process opportunity to be heard when he informally met with Human Resources Director Karen Willis after being informed that he had no right to an "appeal" of any kind.[3] Although defendants assert that such a meeting satisfied any due process right (Def. MPA in Supp. of Mot. for Summ. Judgment, 21:3-12) such an argument

---

[3] This meeting, as stated by Willis, was to listen to any "concerns" of plaintiff and answer any questions regarding "layoff procedures, post-layoff and retirement benefits." (Willis Depo., Exh. 4)

MEMO OF P&A IN OPPOSITION TO
DEFENDANTS' MO FOR SUMMARY JUDGMENT       11

completely disregards the undisputed facts and rationale for such decisions as <u>Dwyer</u>.

The undisputed facts clearly establish that plaintiff was the <u>only</u> employee laid off by defendants for any reason in February 2004, much less related to withdrawal of funding by the ARRA or any other City-related agency. The evidence also demonstrates that Jim Flint had shown both personal and work-related animosities towards Levine by his periodic comments and imposition of a questionable performance improvement plan on him in late 2003 despite disagreement by Levine's immediate supervisor, Deborah Potter. The facts further establish that the ARRA funds were expended on duties previously performed by Levine before the layoff, and that other employees performed substantial work covered by the Property Development Manager job description after Levine was terminated, either by being promoted, reassigned duties or changed from a part-time to full-time schedule. Plaintiff asserted that is layoff was in fact a pretext for termination, thus entitling him to an evidentiary hearing, immediately upon receipt of his layoff notice.

Under these facts, the rationale of <u>Dwyer</u> carries great weight. A public employer who is not allowed by state law to remove an employee from civil service without a showing of incompetence or misconduct should not be allowed to accomplish such a removal by surreptitious means such as exists in this case. <u>Dwyer, supra</u>, at 831. In the case wherein a single employee is laid off or his position is abolished and he claims that such action is but a sham or pretext for an actual termination for cause, it is the conduct and motives of defendants that is directly under scrutiny and, as such, an outside third party other than the agency should serve as the neutral fact-finder for the very reason that the defendants <u>cannot</u> be neutral based upon unlawful conduct and motives at issue. <u>Dwyer, id.</u>. Therefore, the Willis meeting could not meet the required due process hearing demanded by plaintiff. cf. <u>Clements v. Airport Authority of Washoe Co.</u> (9th Cir. 1995) 69 F.3d 321, 332-333.

Moreover, the right of the civil service employee to receive due process before an outside neutral serves the purpose of deferring public entities and officials from engaging in such pretextual conduct, particularly in view of the involvement of only a single employee. <u>Dwyer, id.</u>

/////

/////

/////

### 2. Plaintiff Was Deprived of His Right to a Post-Termination Hearing

Even if plaintiff was not entitled to a pretermination hearing, he was nonetheless entitled to a post-termination evidentiary hearing on his assertion of sham and pretext. Dwyer, supra at 834.

Defendants assert that Levine was not entitled to any post-termination hearing because he never requested such a hearing. The Dwyer court recognized that the effected public employee need only requested either a pretermination or a post-termination hearing in order to trigger his due process rights. Dwyer, supra, at 834-835.

The February 25, 2004 request for a hearing by Levine constituted a request for some type of third party hearing concerning his layoff. The response of defendants, through the Human Resources Director, Karen Willis, was to advise Levine that he had no appeal rights whatsoever regarding his layoff because it was not a termination for cause. As such, any further request for internal remedies from defendants would have been to no avail and futile. As such, Levine was legally excused from making any further efforts short of filing a legal action. cf. Vaca v. Sipes (1967) 306 U.S. 171, 186, 86 S.Ct.903. 914; Sidhu v. Flecto Co., Inc (9th Cir. 2002) 279 F.3d 896, 889-900.

### 3. Defendants Enjoy No Qualified Immunity

Defendant Flint argues that he is entitled to qualified immunity as a public official because he did not act in violation of clearly established law at the time of Levine's termination. (Def. MPA in Support of Mot. for Summ. Judg., 24:25-25:3) Citing only a singular case involving the conduct of federal official (not county, city or local public officials), Flint seeks the protective cover of the Eleventh Amendment.

It has long been established that a governmental entity or employee enjoys no immunity for conduct in violation of federal civil rights laws. Scheur v. Rhoades (1974) 416 U.S. 232, 237; Hafer v. Melo (1991) 502 U.S. 21, 31; Bair v. Krug (9th Cir. 1998) 853 F.2d 672, 675. It also has been held that the immunity granted by the Eleventh Amendment does not apply to local entities such as cities and counties. Lake County Estates, Inc. v. Lake Tahoe Reg. Plan Agency (1979) 440 U.S. 391, 401. As such, neither defendant enjoys an immunity from liability for the deprivation of Mr. Levine's constitutionally protected due process right to a pretermination and post-termination hearing relating to his February 2004 layoff. Duncan v. Dept. of Personnel Administration (2000) 77 C.A.4th 1166,

1182-1183. Defendant Jim Flint is individually liable for any damages incurred by plaintiff as a result of the deprivation of his pretermination and post-termination due process hearings and February 25, 2004 written claim that his layoff was a sham. <u>Dwyer v. Regan</u> (2nd Cir. 1985) 777 F.2d 825, 836-837.

### IV. PLAINTIFF IS NOT REQUIRED TO DEMONSTRATE A CUSTOM OR POLICY OF DENYING DUE PROCESS TO LAID-OFF EMPLOYEES

Defendants' argument that plaintiff must show the existence of a policy, regulation, ordinance or decision of denying due process to laid-off employees officially adopted by them in order to prevail is patently fallacious. (Def. MPA in Supp. of Mot. for Summ. Judgmt., 25:7-16)

A public employee's individual property interest in his/her job is guaranteed by the Fourteenth Amendment. (<u>Loudermill, supra</u>) The right to a due process hearing before that property interest is deprived of him is self-effectuating as a component of that constitutional right. <u>Arnett, supra</u>; <u>Loudermill, supra</u>. Standing along, the constitutional violation through denial of a due process hearing is sufficient to support damages, as is the inadequacy of the post-termination procedures themselves. <u>Clements, supra,</u> at 332.

Therefore, Levine need make not further showing than the deprivation of his due process rights to a pre-termination and/or post-termination hearing in order to establish a claim under §1983.

### V. CONCLUSION

For the reasons stated herein, plaintiff requests an order denying defendants' motion for summary judgment as to the First Claim for Relief for Violation of Due Process under 42 U.S.C. 1983.

Dated: August 25, 2005

/s/
ROGER A. CARNAGEY
Attorney for Plaintiff
EDWARD LEVINE

# PROOF OF SERVICE

The undersigned states:

I am a citizen of the United States and I am employed in the County of Alameda, State of California; I am over the age of 18 years and not a party to the within action; my business address is 405 14th Street, Suite 217, Oakland, CA 94612.

On the date shown below, I caused to be served:

**SUPPLEMENTAL DECLARATION OF ROGER A. CARNAGEY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

on the interested parties shown below in said action, by placing a true copy thereof enclosed in a sealed envelope, with first class postage fully prepaid thereon, in the United States mail at Oakland, California, addressed as follows:

Linda Tripoli
Attorney at Law
One Blackfield Drive, No. 403
Tiburon, CA 94920

**AND**

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**NOTICE OF MANUAL FILING**

**PLAINTIFF'S STATEMENT OF NON-OPPOSITION TO GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON SECOND CLAIM FOR RELIEF FOR AGE DISCRIMINATION ONLY**

by E-mail to:

Linda@tripolilaw.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed at Oakland, California on August 26, 2005.

/s/
JUDY LYONS

MEMO OF P&A IN OPPOSITION TO
DEFENDANTS' MO FOR SUMMARY JUDGMENT