| | |
|---|---|
| 1 | LINDA A. TRIPOLI (SBN 100389)<br>Attorney at Law |
| 2 | One Blackfield Drive, No. 403<br>Tiburon, California 94920 |
| 3 | Telephone: (415) 380-8822<br>Facsimile: (415) 380-8868 |
| 4 | |
| 5 | Attorney for Defendants<br>CITY OF ALAMEDA and JAMES FLINT |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD LEVINE,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF ALAMEDA, a California Charter City, and JAMES M. FLINT, both individually and as City Manager for the City of Alameda,<br><br>Defendants. | Case No. C04-01780 CRB/ADR<br>**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**<br>[Fed. R. Civ. P. 56]<br><br>Date: December 9, 2005<br>Time: 10:00 a.m.<br>Ctrm.: 8 (19th Floor)<br><br>Trial Date: None |

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. STATEMENT OF FACTS ...........................................................................................1

III. LEGAL ARGUMENT ................................................................................................3

   A. In The Ninth Circuit, A Public Employee With A Property Right In His Job Is Entitled To Prior Notice Of His Proposed Layoff And An Opportunity To Respond Regardless Of Whether Or Not He Contends His Layoff Is A Sham Or Pretext ......................3

      1. Plaintiff Received Prior Notice Of His Proposed Layoff And An Opportunity To Respond To An Impartial Person ...........................................................................3

      2. Adopting The *Dwyer* Standard For Due Process In This Instance Would Be Contrary To Established Holdings Of The Ninth Circuit, Would Grant Laid Off Employees Greater Due Process Rights Than Employees Terminated For Misconduct, Is Contrary To Public Policy And Violative Of The "Home Rule" Provisions Of The California Constitution ..........................................................................................7

   B. Given Defendant Flint's Qualified Immunity And Plaintiff's Failure To Plead, Much Less Prove The Existence Of A Relevant Policy Or Custom, Even Assuming *Arguendo* That The Court Finds A Violation Of Due Process, The Court Is Limited To Ordering The Process It Believes Is Due And Nothing More .................................................8

IV. CONCLUSION .........................................................................................................10

DEFS. SUPPL. MEMO OF Ps & As IN SUPPOPRT OF MOTION FOR SUMARY JUDGMENT
Levine v. City of Alameda and Flint
CASE NO. C-04-01780 CRB/ADR     - i -

# TABLE OF AUTHORITIES

**CASES**

*Binkley v. City of Long Beach*, 16 Cal.App.4th 1795, 1811 (1993).................................................. 7, 8

*Brady v. Gebbie*, 859 F.2d 1543, 1551 (9th Cir. 1988) ............................................................................ 8

*Burrell v. City of Los Angeles*, 209 Cal.App.3d 568 (1989) ................................................................ 5, 6

*Burton v. Cascade School Dist. Union High School No. 5*, 512 F.2d 850 (9th Cir.) *cert. denied*,
   423 U.S. 839, 96 S.Ct. 69, 46 L.Ed. 2d 59 (1975) ............................................................................. 9

*Cain v. McQueen*, 580 F.2d 1001 (9th Cir. 1978) ................................................................................... 9

*Caldwell v. Paramount Unified School District*, 41 Cal.4th 189, 203 (1995)..................................... 10

*Carey v. Piphus*, 435 U.S. 247, 262-263 (1978)............................................................................... 8, 10

*Clements v. Airport Authority*, 69 F.3d 321 (9th Cir. 1995) .................................................................. 4

*Codd v. Velger*, 429 U.S. 624, 627 (1977)............................................................................................. 8

*Coleman v. Department of Personnel Administration*, 52 Cal.3d 1102, 1118-19 (1991) ............... 5, 8

*Coleman v. The Quaker Oats Company*, 232 F.3d 1271, 1282 and 1288 (9th Cir. 2000) ............... 10

*Davis v. Scherer*, 468 U.S. 183 (1984) ................................................................................................. 9

*Dwyer v. Regan*, 777 F.2d 825 (2nd Cir. 1985) .................................................................................... 7

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ........................................................................................... 9

*Kreutzer v. County of San Diego*, 153 Cal.App.3d 62, 70 (1984)......................................................... 9

*Los Angeles Protective League v. Gates*, 995 F.2d 1469 (9th. Cir. 1993)...................................... 9, 10

*Lucchesi v. City of San Jose*, 104 Cal.App.3d 323, 328 (1980)........................................................ 7, 8

*Mathews v. Eldridge*, 424 U.S. 319, 334-5 (1976) ............................................................................... 8

*Mennig v. City Council*, 86 Cal.App.3d 341 (1978) ............................................................................. 6

*Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) ................................................. 9

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1974) .................................................................................. 8

*Nidds v. Schindler Elevator Corporation*, 113 F.3d 912, 917 (9th Cir. 1996) .................................. 10

*Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 778 n.8 (9th Cir. 1982); ................................. 8

**CONSTITUTIONAL PROVISIONS**

Article XI, §5 of the California Constitution......................................................................... 1, 6, 8

DFES. SUPPL. MEMO OF Ps & As IN SUPPORT OF MOTION FOR SUMARY JUDGMENT
Levine v. City of Alameda and Flint
Case No. C-04-01780 CRB/ADR     - ii -

## I. INTRODUCTION

At the September 9, 2005 hearing on the cross-motions for summary judgment, the Court requested supplemental briefing on specified issues. As more fully set forth herein, the law of the Ninth Circuit is that a public employee with a property right in his job is entitled to prior notice of his proposed layoff and an opportunity to respond regardless of whether or not he contends his layoff is a sham or pretext. Plaintiff was provided with such notice as well as the opportunity to meet with Human Resources Director Karen Willis. As Human Resources Director, Willis had the authority to make a decision as to whether or not Plaintiff's layoff would go forward. Under the Charter of the City of Alameda, City Manager James Flint retained final authority with regard to Plaintiff's layoff; however, he would not have gone forward with Plaintiff's layoff if Willis had indicated it was improper. Flint's retention of the final decision-making authority does not violate due process requirements and any contrary process would violate the "home rule" provisions of Article XI, Section 5 of the California Constitution.

Assuming *arguendo* that the Court finds a due process violation, it may not award any damages or back pay because Defendant Flint has qualified immunity and Plaintiff has not pled, much less proven, the existence of a policy, regulation, ordinance or decision officially adopted by the entity's officers denying laid off employees due process. In addition, reinstatement is not available. Finally, while the Court may theoretically order prospective injunctive relief, given Plaintiff's non-opposition to Defendants' motion for summary judgment on Plaintiff's age discrimination claim, the issue is moot. The granting of Defendants' summary judgment motion on Plaintiff's age discrimination claim establishes, by virtue of issue preclusion, one or all of the following: There was no continuing need for Plaintiff's skills and services. Defendant City had a legitimate, non-discriminatory reason for the Plaintiff's layoff. The reason proffered for Plaintiff's layoff was not false.

## II. STATEMENT OF FACTS

Defendants refer to and incorporate by reference their statement of facts set forth in their moving papers filed on July 15, 2005 as well as Defendants' Objections To Plaintiff's Evidence

Produced In Support Of Motion For Summary Judgment and their statement of facts set forth in their opposition papers filed on August 26, 2005. In addition, Defendants offer the following additional facts in support of their motion for summary judgment.

Plaintiff testified that he met with Willis prior to his leaving City employment. In the meeting, Plaintiff testified that he talked to Willis about the whole matter, the layoff process and procedures and he told her that he did not think the reasons for the layoff were true. Plaintiff testified that he told Willis that the reason offered was fantasy and that something was going on with Flint. Levine Depo. 183:14-185:4

Willis testified that while Plaintiff did not request to meet with her, when she saw him in the Human Resources office, prior to his layoff, she invited him into her office and they met about his layoff. Willis Depo. 82:21-83:3, 105:5-16.[1] Willis testified that she met with Plaintiff about the layoff for less than five minutes as Plaintiff told her, words to the effect that he had decided to take another route or look at other means. Willis Depo. 106:15-24. Willis testified that had Plaintiff provided her with facts, versus an allegation, that his layoff was for reasons other than the ARRA funding going away, she would have proceeded with an investigation and would have made a decision about whether or not the layoff should proceed. Willis Depo. 85:23-86:16, 124:12-125:16. Willis testified that as Human Resources Director she could make a decision as to whether or not the layoff of Plaintiff should go forward. Willis testified that she had the authority to decide whether or not the layoff was for reasons other than the withdrawal of the funding for Plaintiff's position by the ARRA. Willis testified that if there was information from Plaintiff that caused her to believe that the layoff decision was an improper decision, she would have provided the City Manager with her decision and told him that she believed that the layoff should not occur. Willis Depo. 106:25-107:6, 107:15-22, 157:4-13.[2]

---

[1] See Third Supplemental Declaration of Linda A. Tripoli In Support of Defendants' Motion for Summary Judgment filed herewith.
[2] In addition to providing Willis with factual information of which he was aware, Plaintiff could have requested virtually and internal City document, including documents about ARRA funding under the California Public Records Act. Willis Depo. 162:18-163:22.

Willis' job description as Human Resources Director provides that she is the administrative head of the Human Resources Department and the final departmental authority in all matters of policy and operation and controls all human resources activities. Willis Depo. 160:10-162:17 and Supplemental Declaration of Willis, Exhibit 1. Willis testified that had the City Manager rejected her decision, she would have gone to the City Attorney and told the City Attorney that the layoff should not go forward. The City Attorney could have gone to the City Council which could have overruled the City Manager's decision. Willis Depo. 157:14-159:10. Willis testified that she does not recall discussing the content of the meeting with Plaintiff with City Manager Flint but she did discuss it with the Assistant City Attorney. Willis Depo. 142:21-143:8.

Defendant City of Alameda is a Charter City. Under the Charter of the City of Alameda, Defendant James Flint, as then-City Manager for the City of Alameda, was legally charged with the power to "appoint, discipline and remove all officers and employees of the City under his jurisdiction, subject to Civil Service requirements." Flint Declaration, ¶2, Exhibit A. If Willis had informed Flint that she had determined that Plaintiff should not be laid off after her meeting with him in late February, 2004, Flint would not have proceeded with the layoff. Flint Declaration, ¶6 It was Willis' experience when working with James Flint that if either she or the agency's attorney told him that a personnel action was not appropriate, he would not go forward with it. Supplemental Declaration of Willis, ¶3

### III. LEGAL ARGUMENT

**A. In The Ninth Circuit, A Public Employee With A Property Right In His Job Is Entitled To Prior Notice Of His Proposed Layoff And An Opportunity To Respond Regardless Of Whether Or Not He Contends His Layoff Is A Sham Or Pretext**

**1. Plaintiff Received Prior Notice Of His Proposed Layoff And An Opportunity To Respond To An Impartial Person**

As set forth more fully in Defendants' moving and opposition papers, under applicable Ninth Circuit precedent, a public employee facing layoff is entitled to prior notice of the proposed layoff and an opportunity to respond regardless of whether or not he contends his layoff is a sham or a pretext. *Clements v. Airport Authority*, 69 F.3d 321 (9th Cir. 1995).

Plaintiff has yet to reference, much less discuss *Clements* in his moving and opposition papers. However, it is the law of the Circuit.

As shown more fully in Defendants' moving and opposition papers, it is undisputed that Plaintiff was provided with both prior notice of his proposed layoff and an opportunity to respond both in writing and verbally.

1. Plaintiff testified that he received advance written notice of his layoff from the City Manager and the layoff notice told him the reasons for the layoff. Levine Depo. 177:16-20; 180:14-20.[3]

2. Plaintiff testified that he wrote a letter to Flint, dated February 25, 2004, stating his objection to the layoff; namely, that the "basis for the layoff (i.e. withdrawal of funding by ARRA resulting in elimination of my position) is not factual and represents a sham and a pretext for my actual termination." Levine Depo. 180:21-181:3; Exhibit 3.

3. Plaintiff testified that he received the letter from Willis, dated, February 26, 2004. Plaintiff testified that Willis' letter offered to meet with him and listen to the concerns he had raised in his February 25, 2004 letter to the City Manager. Levine Depo. 182:17-183:13.

4. Plaintiff testified that he met with Willis prior to his leaving City employment. In the meeting, Plaintiff testified that he talked to Willis about the whole matter, the layoff process and procedures and he told her that he did not think the reasons for the layoff were true. Plaintiff testified that he told Willis that the reason offered was fantasy and that something was going on with Flint. Levine Depo. 183:14-185:4.

In addition, it is undisputed that Willis met the legal standard for impartiality under applicable law. While *Clements* does not address the legal standard for "impartiality" of the person to whom the employee to be laid off responds for purposes of <u>pre</u>-termination, not-for-

---

[3] See Declaration of Linda A. Tripoli (in two parts) accompanying Defendants' moving points and authorities already on file.

cause due process, the law regarding the legal standard for impartiality in the context of <u>post</u>-termination, <u>for cause</u> due process is well-established under federal and California law. Furthermore, since courts have recognized that employees terminated for cause are entitled to greater due process than employees not terminated for cause because of the stigma that attaches to being terminated for cause, the legal standard for impartiality should be no greater in <u>pre</u>-termination, not-for-cause situations than it is in <u>post</u>-termination, for cause situations. *Coleman v. Department of Personnel Administration*, 52 Cal.3d 1102, 1119-21 (1991).

As argued in Defendants' moving and opposition papers, in *Burrell v. City of Los Angeles*, 209 Cal.App.3d 568 (1989), two Los Angeles city employees challenged the constitutionality of a city charter provision which only allowed the Los Angeles Civil Service Board to reduce an employee's disciplinary penalty in connection with his post-termination appeal if the same official who originally imposed the disciplinary action consented to the penalty reduction. The court reviewed both federal and California case law regarding <u>post</u>-termination due process hearings for employees discharged for misconduct.

The court found that under federal constitutional law, "the right to a fair and impartial tribunal is not violated by permitting the official who makes the initial disciplinary decision to have the final say in the matter." *Burrell, supra,* 209 Cal.App.3d at 579. Under federal constitutional law, absent a showing of either personal animosity or financial interest in the outcome of the decision, no due process rights are violated where an advisory opinion is rejected by the final decision-maker even if the final decision-maker is the person who made the initial disciplinary decision. *Burrell, supra,* 209 Cal.App.3d at 579-581. The court found that California law was in accord with federal law and that mere involvement in an ongoing disciplinary proceeding does not preclude an individual from making the final appeal decision. <u>Due process is only violated if the reviewer is demonstrably biased or has a personal or financial interest strongly suggesting a lack of impartiality.</u> An appearance of bias is not enough to violate due process and a system which permits a city council, which originally dismissed an employee to make an ultimate decision overruling a civil service commission's

findings and recommendations does not violate due process. *Burrell, supra,* 209 Cal.App.3d at 581-585, citing *Mennig v. City Council,* 86 Cal.App.3d 341 (1978).

Nor were Plaintiff's due process rights violated by the fact that under the Charter of the City of Alameda, City Manager Flint was the person with final legal authority to "appoint, discipline and remove all officers and employees of the City under his jurisdiction, subject to Civil Service requirements." Human Resources Director Willis had the authority to make a decision about the propriety of Plaintiff's layoff after meeting with him. Had Plaintiff provided her with facts, versus an allegation, that his layoff was for reasons other than the ARRA funding going away, she would have proceeded with an investigation and would have made a decision about whether or not the layoff should proceed. Willis would have forwarded that decision to the City Manager and, based on their working relationship, the City Manager would not have proceeded with the layoff. However, even if the City Manager would have proceeded with the layoff, which was within his legal authority to do under the Charter, Plaintiff's due process rights would still not have been violated because "the right to a fair and impartial tribunal is not violated by permitting the official who makes the initial disciplinary decision to have the final say in the matter" *Burrell, supra,* 209 Cal.App.3d at 579.

In fact, since the City of Alameda is a Charter City, it is questionable as to whether or not a court has the legal authority to direct that the City Manager's legal authority under the Charter to remove City employees be transferred to another person because to do so would violate the "home rule" provisions of Article XI, §5 of the California Constitution. *Binkley v. City of Long Beach,* 16 Cal.App.4th 1795, 1811 (1993), *Lucchesi v. City of San Jose,* 104 Cal.App.3d 323, 328 (1980).

Plaintiff was provided with the opportunity to and did respond to Human Resources Director Karen Willis. Plaintiff had the opportunity to provide Willis with facts (versus allegations) to support his claim that his layoff was a sham and a pretext. The fact that Plaintiff, who at the time was being advised by legal counsel, failed to do so does not create a violation of due process. There is no evidence in the record upon which to conclude that Willis was not neutral. There is no evidence in the record showing either personal animosity nor

financial interest in the outcome. In fact, Willis did not make the original decision and, as Human Resources Director, had the experience and expertise to analyze challenges to a layoff decision.

> 2. **Adopting The *Dwyer* Standard For Due Process In This Instance Would Be Contrary To Established Holdings Of The Ninth Circuit, Would Grant Laid Off Employees Greater Due Process Rights Than Employees Terminated For Misconduct, Is Contrary To Public Policy And Violative Of The "Home Rule" Provisions Of The California Constitution**

The legal standard set forth in *Clements* should not be altered in this instance by requiring an opportunity to be heard by a <u>third party</u> for a number of reasons. First, as argued more fully in Defendants' moving and opposition papers, the *dicta* in *Dwyer v. Regan*, 777 F.2d 825 (2nd Cir. 1985) is contrary to federal and California case law holding that the due process right to a fair and impartial post-termination hearing for an employee fired for misconduct is not violated by permitting the official who makes the initial disciplinary decision to have the final say in the matter, whether that official be the top administrator or the governing body.

Second, *Dwyer* sets forth a <u>higher</u> standard for due process for employees terminated by layoff than the law requires for employees terminated for cause. There is no legal or logical reason for adopting such a higher standard given the well-recognized differences in due process requirements for such employees.

Third, at the September 9, 2005 hearing, the Court recognized the adverse public policy implications of requiring that a public agency's financial and staffing decisions be subject to final control and possible overruling by an outside party. To require such outside oversight is inconsistent with the third factor to be balanced by a court when determining what process is constitutionally due recognizing that not all situations calling for procedural safeguards call for the same kind of procedure. Courts are to balance: 1) the private interest that will be affected by the official action, 2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards and 3) the government's interest. *Coleman v. Department of Personnel Administration*, 52 Cal.3d 1102, 1118-19 (1991), citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1974) and *Mathews v. Eldridge*, 424 U.S. 319, 334-5, (1976). Requiring third party "veto" authority

unduly burdens the government's interest in ensuring that staff paid for with public funds are performing duties and responsibilities actually needed by the entity. It also unduly interferes with the right of the entity to decide its financial and organizational priorities. Furthermore, as a practical matter, who is to decide who the outside party is to be?

Fourth, as set forth more fully above, at least with regard to California Charter cities, such a requirement violates the "home rule" provisions of Article XI, §5 of the California Constitution. *Binkley v. City of Long Beach*, 16 Cal.App.4th 1795, 1811 (1993), *Lucchesi v. City of San Jose,* 104 Cal.App.3d 323, 328 (1980).

For all of these reasons, the Court should uphold *Clements* and not expand the law of the Ninth Circuit, even in this instance.

**B. Given Defendant Flint's Qualified Immunity And Plaintiff's Failure To Plead, Much Less Prove The Existence Of A Relevant Policy Or Custom, Even Assuming *Arguendo* That The Court Finds A Violation Of Due Process, The Court Is Limited To Ordering The Process It Believes Is Due And Nothing More**

The Ninth Circuit and the United States Supreme Court "have repeatedly held that the appropriate remedy for deprivation of a liberty and/or property interest without due process is to order the process that was due and any attendant damages which directly resulted from the failure to give the proper procedure." *Brady v. Gebbie,* 859 F.2d 1543, 1551 (9th Cir. 1988) citing *Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773, 778 n.8 (9th Cir. 1982); *Carey v. Piphus,* 435 U.S. at 259-64 (1978) and *Codd v. Velger,* 429 U.S. 624, 627 (1977).

Reinstatement, however, is not an appropriate remedy for deprivation of property without due process.

> Brady contends, however, that this court has also found that in certain circumstances, reinstatement might be appropriate for deprivation of property without due process. He cites to *Burton v. Cascade School Dist. Union High School No. 5,* 512 F.2d 850 (9th Cir.) *cert. denied,* 423 U.S. 839, 96 S.Ct. 69, 46 L.Ed. 2d 59 (1975) and *Cain v. McQueen,* 580 F.2d 1001 (9th Cir. 1978), for support. His reliance on those cases, however, is misplaced."

The Ninth Circuit distinguished *Burton* and *Cain* where reinstatement was ordered because those cases involved a claimed violation of due process <u>and</u> a first amendment claim.

> "We agree with these cases that there may be a right to reinstatement when another substantive right coexists with the right to procedural due process. . . Brady, however, has not alleged another such right, but solely alleged his right to due

process. We refuse to adopt his argument that reinstatement is an available remedy in such a case. *Burton* and *Cain* do not require us to do otherwise. The district court therefore did not err in ruling that reinstatement was not an available remedy for his claims and granting partial summary judgment to Gebbie on this issue." *Brady, supra* 859 F.2d at 1552.

Back pay is also legally unavailable as a remedy because as argued more fully in Defendant's moving and opposition papers, Defendant Flint is entitled to qualified immunity (*Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Davis v. Scherer*, 468 U.S. 183 (1984)) and Defendant City of Alameda is not liable for any money damages, not even nominal damages, because Plaintiff has failed to plead much less bear his burden of proving the existence of a policy, regulation, ordinance or decision officially adopted by the entity's officers denying employees due process in connection with their layoff. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), *Kreutzer v. County of San Diego*, 153 Cal.App.3d 62, 70 (1984). In *Los Angeles Protective League v. Gates*, 995 F.2d 1469 (9th. Cir. 1993), the Ninth Circuit ruled that an individual defendant entitled to qualified immunity cannot be held liable for an award of back pay, which in any event must be paid by the employer by definition. Furthermore, an employer cannot be liable for back pay unless the constitutional violation was the result of an official custom or policy. *Los Angeles Protective League, supra*, 995 F.2d at 1472, n. 1.

While the Court may theoretically still order prospective injunctive relief by ordering Defendant City of Alameda to grant Plaintiff an additional opportunity to be heard at this stage (*Los Angeles Protective League, supra*, 995 F.2d at 1472), in this instance, there is no justification for doing so.[4] In the present case, Defendants moved for summary judgment of Plaintiff's claim for relief for age discrimination under the California Fair Employment and Housing Act (FEHA, California Government Code §12940 *et seq.*). On August 25, 2005, Plaintiff filed a Statement of Non-Opposition to Granting Defendants' Motion for Summary Judgment on Second Claim for Relief for Age Discrimination Only.[5] The granting of

---

[4] It should be noted that Plaintiff did not request such prospective injunctive relief in his Complaint.
[5] See Document No. 52.

Defendant's Motion on Plaintiff's age discrimination claim, establishes as a matter of law <u>at least one, if not all</u> of the following relative to the elements of a claim for age discrimination:

- There was no continuing need for Plaintiff's skills and services because his various duties were no longer being performed. *Nidds v. Schindler Elevator Corporation*, 113 F.3d 912, 917 (9th Cir. 1996).
- Defendant City of Alameda had a legitimate, non-discriminatory reason for its decision to lay off Plaintiff. *Caldwell v. Paramount Unified School District*, 41 Cal.4th 189, 203 (1995).
- There is no evidence that the reason proffered by the City of Alameda for Plaintiff's layoff (elimination of ARRA funding due to indefinite suspension of the golf course and hotel project) was false or that the true reason was age discrimination. *Coleman v. The Quaker Oats Company*, 232 F.3d 1271, 1282 and 1288 (9th Cir. 2000), *Nidds, supra* 113 F.3d at 918.

As a matter of issue preclusion, Plaintiff has conceded at least one, if not all of these elements.

As a result, Defendants have proven that Plaintiff would have still been laid off even if he had been provided any additional process ultimately found due by this Court and the act of providing him with that additional due process is moot and unnecessary. *Carey v. Piphus*, 435 U.S. 247, 262-263 (1978).

### IV.  CONCLUSION

Defendants respectfully request that the Court grant Defendants' motion for summary judgment, deny Plaintiff's motion for summary judgment, and dismiss Plaintiff's Complaint.

Dated: November 18, 2005          Respectfully submitted,

By: *[signature]*
Linda A. Tripoli
Attorney for Defendants