ROGER A. CARNAGEY (SBN 79005)
Attorney at Law
One Kaiser Plaza, Suite 601
Oakland, CA 94612
(510) 452-5005
(510) 451-2944 fax

Attorney for Plaintiff
EDWARD LEVINE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD LEVINE, | Case No. C04-01780 CRB |
| Plaintiff, | **PLAINTIFF'S REPLY TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| CITY OF ALAMEDA, a California Charter City, and JAMES M. FLINT, both individually and as City Manager for the City of Alameda, | Hearing Date: December 9, 2005<br>Time: 10:00 a.m.<br>Place: Courtroom No. 8, 19th Floor |
| Defendants. | Hon. Charles R. Breyer |

Plaintiff Edward Levine submits this reply to several points raised in defendants' supplemental brief in order to facilitate the Court's decision on the parties' cross-motions for summary judgment.

**A. THE AUTHORITY OF THE HUMAN RESOURCES DIRECTOR OVER FINAL DECISIONS ON PERSONNEL MATTERS WAS LIMITED**

Defendants argue that their Human Resources Director, Karen Willis, possessed the authority to "make a decision about the propriety of Plaintiff's layoff" pursuant to her job description. (Def. supp. Memo. of Pts. and Auth., 6:1-4; 9:6-10) They further assert the speculation that IF plaintiff had delivered factual evidence to Willis that his layoff was not based on funding withdrawal for the ARRA project at issue, then Willis would have further investigated and made a decision that the City Manager would have followed. This argument is specious for

the following reasons.

Plaintiff was given the layoff notice with only seven working days in which to take any action (February 17 to February 27, 2004, with intervening holiday on February 23, 2004, Presidents' Day). Within that short period of time Defendants' contend that plaintiff could have obtained "facts" upon which Willis could have evaluated the merits of the pretext and sham allegation, although Willis testified that there were all sorts of things he could have done to obtain the information, such as a public records request, speaking with others, or documents in his own possession. (Third Supp. Decl. of Linda Tripoli, Ex. 1, 163:3-22) Willis could conjure no other avenues for Levine to obtain this "new" information to prompt her further investigation.[1] Essentially, defendants argue that Levine should be required to conduct his own investigation of the facts underlying the layoff on very short notice and prior to Willis taking substantive action on his claim of pretext and sham. Such a high barrier would effectively foreclose any employee with a claim of pretext and sham from ever obtaining his due process right regardless of the merits of the claim itself. As such, defendants proposed requirement is artificial and self-serving.

Moreover, even if Levine could have obtained such "new" factual information, Willis' authority was limited to a <u>final decision</u> over only her <u>own</u> department's employees, while she believes she could make an advisory recommendation to Flint. (Third Supp. Decl. of Linda Tripoli, Ex. 1, 157:4-22; 160:10-163:22)

In short, defendants' proposition that the burden was on Levine to obtain factual evidence to justify his contention that the layoff was a pretext and sham does not comport with the due process requirements under which these unique layoff circumstances must be examined. It is precisely because the public employer is in a stronger position to hide and obfuscate the real reason for a pretextual and sham layoff, than is the affected employee to even start to obtain any "new" facts, that the Court should reject defendants' arguments, especially since Willis never advised Levine to search for "new" facts and considering the impractical logistical and time limits for him to do so in any event.

---

[1] It is noteworthy that the parties herein have conducted at least 12 to 15 days of depositions in the discovery of such information from approximately 10 witnesses as well as production of thousands of pages of documents over an 18-month period.

PLAINTIFF'S REPLY TO DEFENDANTS'
SUPP..MPA FOR SUMM. JUDGMENT                    2

## B. THE DWYER STANDARD

Defendants contend that the <u>Dwyer</u> decision sets a higher standard of due process for layoff situations than "for cause" terminations of public employees. However, the <u>Dwyer</u> court recognized that the <u>unique circumstances of a suspect individual layoff</u> warranted a hearing by an independent person or entity separate from the deciding agency due to the tainted motives of the latter in ostensibly circumventing the employee's constitutional right to due process. Defendants' contention rings hollow in light of its own civil service hearing procedures whereby the Civil Service Commission, an independent body, conducts evidentiary hearings on "for cause" terminations of civil service employees such as plaintiff Levine. <u>Dwyer</u> recognized that the directives that such an independent agency conduct an evidentiary hearing for an <u>individual</u> who claims pretext and sham in his layoff would assure that a "for cause" termination is not unconstitutionally derogated to a lesser status than it is otherwise entitled [i.e., notice and opportunity to be heard (pretermination) with an evidentiary hearing (post termination)] due to official misconduct by high level government employees such as the City Manager.[2]

As to defendants' argument that such outside party review of plaintiff's claims would interfere with the governmental interest in ensuring the actual need for public services and financial/ organizational priorities, the <u>Dwyer</u> court recognizes this important governmental interest by carving out a uniquely circumstantial <u>exception</u> to the general due process rules in layoff situations (<u>Clements</u>) while protecting the highly valued due process rights to a hearing for an employee who finds himself in those unique circumstances, such as plaintiff Levine. cf. <u>Duncan v. Department of Personnel Administration</u> (2000) 77 C.A.4th 1166, 1182-1183; <u>Gilbert v. Homar</u> (1997) 520 U.S. 924, 934, 117 S.Ct. 1807, 1814. This Court is authorized to create such a due process exception to the general rule of law because these cases are subject to flexible and changing factual conditions. <u>Vanelli v. Reynolds School Dist</u> (9th Cir. 1982) 667 F.2d 773; <u>Duncan, supra</u>.

/////

---

[2] <u>Dwyer</u> recognized that such considerations do not apply to group or mass layoff situations in which economics and budgetary analyses are well documented and open to public scrutiny.

PLAINTIFF'S REPLY TO DEFENDANTS'
SUPP..MPA FOR SUMM. JUDGMENT      3

### C. THE "HOME RULE" AND ISSUE PRECLUSION ISSUES RAISED BY DEFENDANTS

Defendants have asserted new issues regarding "Home Rule" under the California Constitution and "issue preclusion"[3] as a consequence of plaintiff's non-opposition to their motion for summary judgment on the age discrimination claim. Due to the fact that these issues have been asserted for the very first time in the November 18, 2005 supplemental briefing of defendants and raise complex legal issues bearing upon the Court's decision, plaintiff requests the Court allow him additional time to research and brief these two issues in order to have a fair opportunity to respond, thus avoiding surprise and prejudice to plaintiff's case.

Dated: December 1, 2005

/s/
ROGER A. CARNAGEY
Attorney for Plaintiff
EDWARD LEVINE

---

[3] Defendants boldly assert this argument without citation to any legal precedent.

PLAINTIFF'S REPLY TO DEFENDANTS'
SUPP..MPA FOR SUMM. JUDGMENT         4