IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD LEVINE,<br><br>    Plaintiff,<br><br>   v.<br><br>CITY OF ALAMEDA and JAMES M. FLINT,<br><br>    Defendants._____/ | No. C 04-01780 CRB<br><br>**MEMORANDUM AND ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT** |

 Plaintiff Edward Levine has filed this action under 18 U.S.C. § 1983, claiming that defendants violated his procedural due process rights by failing to provide a meaningful opportunity to be heard prior to his layoff, and that defendants engaged in age discrimination in violation of California law.  Now pending before the Court is defendants' motion for summary judgment as to both claims, arguing that plaintiff's constitutional rights were not violated, the City can not be liable because there was no policy related to plaintiff's claims, and that James Flint, the individual defendant, benefits from qualified immunity.  Plaintiff also filed a motion for summary judgment requesting that the Court determine as a matter of law that his due process rights were violated and that defendants do not benefit from qualified or any other immunity.  After carefully considering the parties' moving papers, including supplemental briefing, and with the benefit of two oral arguments, the motions for summary judgment are both GRANTED in part and DENIED in part.

**BACKGROUND**

Plaintiff was hired in 1995 by the City of Alameda to perform property management functions on behalf of the Alameda Reuse and Redevelopment Authority ("ARRA"), a Joint Powers Authority created by the state pursuant to federal legislation, to oversee the transition of the former Alameda Naval Air Station from the U.S. Navy to the City of Alameda. In 1999, plaintiff received civil service status by the City and was given the job title of Economic Development Manager and later Leasing and Property Manager. In 2002, plaintiff's classification was changed from Leasing and Property Manager to Golf Course Project Manager in recognition of his transition from his previous duties to planning and managing the development of a golf course and resort project on the former Alameda Naval Air Station.

On February 17, 2004, defendant Flint informed plaintiff by letter that plaintiff would be laid off, effective February 27, 2004. Defendants contend that the layoff was required because the ARRA decided to cease funding plaintiff's position because it was suspending development efforts on the golf course and resort. On February 25, 2004, plaintiff responded to Flint's letter, requesting a pretermination hearing. Later in the letter, he also requested a "due process hearing by a neutral *third party* regarding the basis of [Flint's] layoff decision." Plaintiff further asserted that the basis for his layoff represented "a sham and a pretext" for the basis of his actual termination, which he argues was Flint's personal dislike for him.

On February 26, 2004, Director of Human Resources, Karen Willis, at the request of Flint, wrote a letter to plaintiff telling him that he would not receive a pretermination hearing and that he was not entitled to a hearing before a third party because such action was not provided in plaintiff's union contract with the City. Further, Willis indicated that she would "be happy to meet with [plaintiff] to listen to [plaintiff's] concerns and answer any questions regarding layoff procedures[,] post layoff and retirement benefits."

On either February 26 or 27, 2004, Willis and plaintiff had a five-minute, informal discussion when plaintiff was in Willis' office for other reasons. Based on the record, its unclear what actually was discussed at that meeting, but by all accounts the conversation did

2

1  not include an extensive discussion of plaintiff's layoff.  Plaintiff testified in a deposition that
2  although he cannot remember what they talked about, "it was obviously about this whole
3  matter, the process, the procedures," and probably included plaintiff asserting his belief that
4  his layoff was based on a "fantasy" and that "something was going on with" Flint.  Willis
5  testified in her deposition that she asked plaintiff if he had received her letter and he
6  allegedly told her that he had and he was pursuing other avenues.  On February 27, plaintiff
7  was laid off from his job with the City of Alameda.

## DISCUSSION

Plaintiff initially filed this action on May 5, 2004, and included causes of action for a violation of his procedural due process rights and for age discrimination.  Plaintiff has filed a statement of non-opposition to defendants' motion for summary judgment on its second claim for age discrimination under the California Fair Employment and Housing Act.  As a result, that claim is DISMISSED with prejudice.

1.  **Legal Standard for Summary Judgment**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

//
//
//

**2.   Pre-Termination Due Process**

   **A.   Legal Standard for Pre-Termination Due Process**

A procedural due process analysis requires the examination of two questions: whether plaintiff had a protected property interest in his continued employment and, if so, whether he received all the process that was due if deprived of this interest. See Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985); Clements v. Airport Authority of Washoe Cty., 69 F.3d 321, 331 (9th Cir. 1995). Neither party disputes that plaintiff had a protected property interest. The only disputed issue is whether plaintiff received the process he was due.

Under a due process analysis, plaintiff must receive notice and an opportunity to be heard "before he is deprived of any significant property interest." Clements, 69 F.3d at 331; see also Loudermill, 470 U.S. at 542 (noting that "the root requirement of the Due Process Clause" is that "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest") (internal quotations and citations omitted) (emphasis in original). The Court does not require an "elaborate" pretermination hearing, only that "some kind of hearing" be afforded to the employee prior to termination. Id. In general, "something less" than a full evidentiary hearing is required prior to termination. Loudermill, 470 U.S. at 545.

   **B.   Plaintiff's Opportunity to Be Heard**

Here, plaintiff received notice of his termination, in writing, from Flint on February 17, 2004, outlining the reason for plaintiff's termination. Plaintiff does not dispute receiving this letter, nor its contents. The notice requirement was thus met, leaving only the question of whether plaintiff received the requisite meaningful opportunity to respond.

Before analyzing the substance and quality of any opportunity to be heard to determine whether it is sufficiently "meaningful," the Court first must determine whether there existed an opportunity to be heard in any form. Defendants assert in their brief that Willis' letter of February 26 to plaintiff where she said she "would be happy to meet with you to listen to your concerns and answer any questions regarding layoff procedures, post-layoff and retirement benefits," and their subsequent meeting satisfied this requirement. See

Letter to Ed Levine, Decl. of Linda Tripoli Part Two, at 39. Willis' letter, however, also denied plaintiff's request for a pretermination hearing, asserting that such a hearing was unavailable in the context of a layoff. Id. In his letter of February 25, plaintiff had requested a pretermination hearing. See Letter to James M. Flint, Decl. of Linda Tripoli Part Two at 38. Willis and plaintiff informally met for "less than five minutes" following this exchange of letters when plaintiff had coincidentally stopped into the Human Resources office. See Willis Depo. at 106:15-18.

Defendants concede that, even under circumstances of a layoff, plaintiff is entitled to an opportunity to respond to the City's decision. Yet in effect, defendants urge the Court to rule that plaintiff received an opportunity to be heard because Willis offered such an opportunity in her February 26 letter and then met with plaintiff thereafter. If such an opportunity never materialized, defendants argue, it is because plaintiff never requested a meeting with Willis after receiving her letter. The Court is not persuaded by defendants' argument.

First, plaintiff expressly requested a hearing prior to his termination to voice his objections to the purported reason for his layoff. Willis' letter clearly states that plaintiff is not entitled to a pretermination hearing. While a full evidentiary hearing may not have been required in this context, some opportunity to be heard was required. Yet defendant did not provide such an opportunity.[1] See Loudermill, 470 U.S. at 545. Due process requirements establish that it is defendants' responsibility to provide an opportunity to be heard. See Loudermill, 470 U.S. at 546 ("The tenured public employee is entitled to ... an opportunity to present his side of the story."). Defendants contend that there is no due process violation because plaintiff did not request a meeting a second time after the exchange of letters. See Willis Depo. at 82:21-24. Yet it was unnecessary for plaintiff to request such an opportunity in the first place. To require plaintiff to do so twice places an excessive burden on the plaintiff that exceeds the bounds of the Constitution. The fact that plaintiff requested a

---

[1] Even if Willis considered plaintiff's request to be one seeking a full evidentiary hearing rather than a simple opportunity to be heard, it is immaterial to the Court's inquiry whether defendant provided some opportunity to be heard in the first place. See Willis Depo at 124:15-21.

hearing only underscores the material failure by defendants to provide an opportunity to be heard.

Second, defendants' assertion that an offer from the Director of Human Resources *to listen* to concerns and *answer* any questions pertaining to purely procedural matters does not satisfy the requirements of due process. In Loudermill, the Court stated that the purpose of requiring an opportunity to respond is so that "even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decision-maker is likely to be before the termination takes effect." Loudermill, 470 U.S. at 543. Further, the Court noted that "a prior hearing facilitates the consideration of whether a permissible course of action is also an appropriate one." Loudermill, 470 U.S. at 543, n.8. Even assuming *arguendo* that Willis has sufficient authority to provide a meaningful opportunity to be heard, her offer as it is written, particularly in light of the fact that she goes on to deny a "predetermination [sic] hearing," does not provide an opportunity to respond with sufficient clarity and purpose to satisfy constitutional due process requirements under Loudermill and its progeny.[2] In light of the insufficient offer of an opportunity to be heard, the subsequent haphazard and informal five-minute discussion between plaintiff and Willis cannot satisfy due process, either. Willis stated in her deposition that she "happened to see [plaintiff]" when he had entered the human resources department, and she "invited him into my office." Willis Depo. at 105:7-10. While only "some kind of hearing" is necessary to satisfy due process requirements, a random encounter of less than five minutes without a clear understanding of the purpose of the meeting cannot qualify as a sufficient opportunity to be heard. In fact, a fair reading of the substance and context of Willis' offer more appropriately resembles a procedural exit interview than a meaningful opportunity to be heard sufficient to satisfy due process requirements. This argument therefore fails, as well.

---

[2] This is a generous assumption because Willis acknowledges that she was not the "ultimate authority for deciding personnel matters." See Willis Depo at 107:11-22. Nor was she acting as the decision-maker's intermediary such that she intended to report back to Flint the substance of any discussion with plaintiff. Id. at 108:16-22 (noting that plaintiff would have needed to show new information as to why the layoff was improper before she would discuss the issue with Flint).

6

Based on all of the above, the Court finds that plaintiff was not afforded a proper opportunity to be heard prior to his termination and that his constitutional due process rights were violated. Therefore, the Court need not address whether the actual substance of the meeting between Willis and plaintiff was sufficiently "meaningful" to satisfy due process, nor whether Willis was sufficiently impartial to satisfy constitutional requirements.

### 3. Defendant Flint's Qualified Immunity

#### A. Legal Standard for Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S. 194, 202 (2001).

A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, then proceed to determine if the right was "clearly established." See Wilson v. Layne, 526 U.S. 603 (1999); Conn v. Gabbert, 526 U.S. 286, 290 (1999). The threshold question is whether the facts alleged show the govenrment official's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If a violation could be found based on the allegations, the next sequential step is to ask whether the right was clearly established. Id. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable person that his conduct was unlawful in the situation he confronted. Id. If the law is determined to be clearly established, the next question is whether, under that law, a reasonable official could have believed his conduct was lawful. See Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993).

//

//

### B. Application of Qualified Immunity

As explained above, the first prong of the qualified immunity has been satisfied because defendant Flint was city manager for Alameda and he deprived the plaintiff of his due process rights by failing to provide an opportunity to be heard prior to his termination. Furthermore, there is no dispute that constitutional due process rights are clearly established. Therefore, the inquiry here centers around whether defendant Flint could have reasonably believed that his conduct was lawful. If so, he receives qualified immunity.

There is no dispute that Flint intended to satisfy plaintiff's due process rights after receiving his letter of February 25. See Flint Depo at 72 (testifying that he instructed Willis "to do whatever you need to do to make sure that his due process rights are respected"). As the ultimate authority on personnel matters and the one who terminated plaintiff, defendant Flint is liable for the deprivation of plaintiff's constitutional due process rights. Moreover, by forwarding plaintiff's letter to Willis, he effectively assigned her to be his agent in this matter. Willis, in turn, consulted with the city attorney's office before responding to plaintiff's letter.

It is evident from Willis' letter to plaintiff and her deposition that she interpreted plaintiff's request for a "pretermination hearing" as a request for a formal evidentiary hearing akin to the process required under a termination for cause. Willis was wrong to believe she had complied with due process, but she was not unreasonable in believing so. This conclusion is further supported by the fact that she subsequently asked plaintiff in their brief conversation why he had not requested a meeting with her. See Willis Depo at 106:20-24. While it was the City's responsibility to provide the opportunity to be heard (and not plaintiff's to request it), Willis reasonably believed that she was providing that opportunity by asking plaintiff if he wanted to meet with her about his termination. Willis' mistake was not a result of a failure to understand, or an unreasonable application of, the relevant law. She, with the help of the city attorney's office, understood that notice and an opportunity to be heard was required; rather, she merely mistakenly believed that she was complying with

8

due process requirements. As a result, the Court finds that Flint, both individually and through Willis, his agent, benefits from qualified immunity in this matter.

**4.  City's Liability Under § 1983**

   **A.  Legal Standard for Municipal Liability Under § 1983**

A city can be sued directly for monetary, declaratory, or injunctive relief under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 690 (1978). To establish such municipal liability, a plaintiff must satisfy four conditions: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) (quoting Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir.1992) (citation omitted)).

   **B.  Application of Municipal and Official's Liability Under § 1983**

Defendants correctly assert that plaintiff did not "plead and prove the existence of a policy, regulation, ordinance or decision officially adopted by the entity's officers denying employees due process in connection with their layoff." Further, the City never officially adopted a regulation, ordinance or decision advocating a denial of due process when terminating employees.

Plaintiff argued at oral argument that a single act made by an individual with final policymaking authority can become an official policy for Monell purposes. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) ( holding that "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly"); see also Monell, 436 U.S. at 694 (holding that liability may be imposed based on actions of officials "whose edicts or acts may fairly be said to represent official policy"). Yet "[t]he fact that a particular official--even a policymaking official--has discretion in the exercise of particular functions does not, without

more, give rise to municipal liability based on an exercise of that discretion." <u>Pembaur</u>, 475 U.S. at 481-482 (emphasis added). While defendant Flint evidently had final authority over whether plaintiff should have been terminated, plaintiff offers no evidence that he had final *policymaking* authority for the City such that his decision to terminate plaintiff in a manner that violated due process could be deemed to be the policy of the City. Moreover, the facts of this case do not support such a proposition. Defendant Flint made an individualized decision to terminate plaintiff and he apparently intended for the termination to be conducted in accordance with due process requirements. The fact that he was mistaken in his belief does not mean that his decision established a city policy to deny terminated employees their due process rights. Therefore, the Court holds that the <u>Monell</u> claim is denied and the City bears no liability for the deprivation of plaintiff's constitutional due process rights.

### 5. Remedy

The appropriate remedy for deprivation of a property interest without due process "is to order the process that was due and any attendant damages which directly resulted from the failure to give the proper procedure." <u>Brady v. Gebbie</u>, 859 F.2d 1543, 1551 (9th Cir. 1988). In his complaint, plaintiff prays for legal and equitable relief, including a declaratory judgment, reinstatement, back pay and other monetary damages. Yet because the City is not liable under section 1983, and because defendant Flint benefits from qualified immunity, plaintiff's deprivation of his constitutional due process right cannot be remedied by money damages. As a result, plaintiff is only entitled to equitable relief against defendant Flint only.

### A. Equitable Relief

#### 1) Reinstatement

The Ninth Circuit has held that reinstatement is only appropriate when "another substantive right coexists with the right to procedural due process." <u>Gebbie</u>, 859 F.2d at 1552 (refusing to recognize reinstatement as an available remedy when the only right alleged is a procedural due process right). Plaintiff only asserts a procedural due process right here and is therefore not entitled to reinstatement.

**2) Back Pay**

The Ninth Circuit has held that an award of back pay against a city is considered equitable relief. See Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1472 n.1 (9th Cir. 1993). Yet such relief is not generally characterized as an equitable remedy as to an individual defendant, and is certainly not available when an individual defendant has qualified immunity. Id. Similarly, here, where the individual defendant benefits from qualified immunity, back pay is not an available remedy.

**B.  Appropriate Remedy**

Plaintiff is entitled to a declaratory judgment to the effect that his constitutional due process rights were violated by defendant Flint. Plaintiff may also receive the due process that was denied him. In this case, he must receive a meaningful opportunity to be heard regarding his objections to his layoff. After this extensive litigation, the Court finds that any individual working for the City is not sufficiently neutral to provide a proper opportunity to be heard. As a result, the Court orders defendant Flint to provide a meaningful opportunity to be heard before a neutral third-party to be determined by mutual agreement between the parties. Defendant Flint shall bear all costs for the neutral arbiter.

//

//

//

//

//

## CONCLUSION

For the foregoing reasons, both motions for summary judgment are GRANTED in part and DENIED in part. Plaintiff's motion for summary judgment with respect to an assertion of a due process violation is GRANTED. Defendant Flint's assertion of qualified immunity is GRANTED. The City's assertion of non-liability under Monell is GRANTED. Plaintiff shall receive an opportunity to be heard consistent with this Order. The parties are ORDERED to appear before the Court for a status conference on Friday, February 10, 2006, at 8:30 am.

**IT IS SO ORDERED.**

Dated: January 12, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE